ARTHUR Y. MILAM and the FIRST NATIONAL BANK of Tampa, Florida, as Executors and Trustees of the Last Will and Testament of D. P. DAVIS, Deceased, ELIZABETH NELSON DAVIS, THE CHILDREN'S HOME SOCIETY OF FLORIDA, a Corporation, GEORGE R. DAVIS, TIFFANY & COMPANY, a Corporation, and FLOYD HURST, *Appellants*, v. GEORGE DAVIS and DAVID DAVIS, by their next friend and guardian, MRS. HARRIETT MANN, and MRS. HARRIETT MANN in her own right, *Appellees*.

Division B.

Opinion filed May 28, 1929.

Petition for rehearing denied July 18, 1929

918

*John B. Sutton, Robert H. Anderson, Bussey, Mann & Barton, McKay, Withers & Ramsey, Caraballo, Moran & Graham,* and *Taliaferro & Morris,* for Appellants.

*Mabry, Reaves & Carlton,* for Appellees.

WHITFIELD, J.—In a suit brought by the appellees as complainants to have determined the rights of the parties under a will, it appears that D. P. Davis, having two minor children, on May 25, 1925, made a will, after which he married, and 1926 died leaving his wife and the two minor children surviving. The will (1) directed that the testator's debts be paid; (2) made a bequest of $25,000.00 to the Children's Home Society of Florida; (3) designated a guardian of the persons and estates of the two minor children; and (4) devised and bequeathed to named trustees, "all the rest and residue of the property of every kind and nature whatsoever, and wheresoever situated, belonging to me at the time of my death, or in which I have any interest, including policies of insurance on my life," with directions as to the disposition and uses of such residuary bequest, the testator's two minor children being among the chief beneficiaries. No mention of a wife or widow or of the dower or other rights or interests of the wife or widow of the testator is made in the will. The testator was unmarried when he executed the will, but subsequently married. The real contest is as to the proceeds of the policies of insurance on the tes-

tator's life, amounting to $201,135.39. The life insurance policies were severally made payable "to the insured," "to the estate of the insured" and "to the executors, administrators and assigns of the insured," and had not been assigned or the beneficiaries changed prior to the testator's death, except as provided in the will.

The decree adjudicated that the proceeds of the life insurance policies were not subject to the debts of the testator, or to the dower or other rights of the widow, or to the legacy to the Children's Home Society of Florida, and that the proceeds of the life insurance policies should be used by the trustees as provided in the will. The executors and trustees, the widow, the Children's Home Society of Florida, the creditors, and the testator's father, who is a beneficiary under the residuary bequest, appealed, the minor children of the testator and their guardian being the appellees.

In the absence of a statute providing otherwise, the proceeds of life insurance policies payable to the insured or to his executors, administrators or assigns are subject to dower rights like other personal estate of the insured. See Act November 7, 1828; Sec. 3630, Rev. Gen. Stats. 1920; Woodberry v. Matherson, 19 Fla. 778; Smith v. Hines, 10 Fla. 258. See also Burdett v. Burdett, 26 Okla. 416, 109 Pac. R. 922; 35 L. R. A. 964; Sec. 5494, Comp. Gen. Laws 1927.

The following statutory provisions are to be considered:

"Every person of the age of twenty-one years, being of sound mind, shall have power by last will and testament in writing, to devise and dispose of his lands, tenements and hereditaments, of his estate, right, title, interests in the same in possession, remainder or revision, and of personal property." Act November 20, 1828; Sec. 1792, Rev. Stats. 1892; Sec. 3592, Rev. Gen. Stats. 1920; Sec. 5457, Comp. Gen. Laws 1927; Sec. 2269, Gen. Stats. 1906.

"When a husband shall die intestate, or shall make his

last will and testament and not make provisions therein for his wife, as expressed in Sec. 5493, she shall be entitled to a share in the personal estate in the following manner, to-wit: If there be no children, or if there be but one child, she shall be entitled to one-half; but if there be more than one child, she shall be entitled to one-third part in fee simple, and such claim shall have preference over all others, and the said share shall be free from all liability for the debts of the decedent." Act November 7, 1828. The last 16 words of the statute were added by the enactment of Sec. 1831, Rev. Stats. 1892.

"In all cases in which the widow of a deceased person shall be entitled to dower, she may elect to take in lieu thereof a child's part.

"Such election shall be made within twelve months after the probate of the will or granting letters of administration or she shall be confined to her dower.

"If a widow take dower she shall be entitled only to a life estate in the real property, to return at her death to the estate of her deceased husband for distribution; if she takes a child's part, she shall have in the property set apart to her a fee simple estate in the real property, and an absolute right to the personal property set apart to her, with power to control or dispose of same by will, deed or otherwise." Act February 8, 1838.

See Sec. 2, page 86, Secs. 1 and 2, page 87, Duval's Compilation; Secs. 2, 3 and 4, page 185, Thompson's Digest and notes on Territorial decisions; Secs. 2, 3 and 4, page 476, McClellan's Digest; Secs. 1831, 1833, Rev. Stats. 1892; Secs. 2307, 2309, Gen. Stats. 1906; Secs. 2307, 2309, Florida Compiled Laws 1914; Secs. 3630, 3632, Rev. Gen. Stats. 1920; Secs. 5494, 5496, Comp. Gen. Laws 1927.

"Whenever any person shall die in this State leaving insurance upon his or her life, the said insurance shall inure

exclusively to the benefit of his or her child or children, husband or wife, in equal portions, or to any other person or persons for whose use and benefit said insurance is declared in the policy; and the proceeds thereof shall in no case be liable to attachment, garnishment, or any legal process by any creditor or creditors of the person whose life was so insured, unless said policy declares that said insurance was effected for the benefit of such creditor or creditors." Chap. 1864, Acts 1872. See Sec. 22, page 534, McClellan's Digest; Sec. 2347, Rev. Stats. 1892.

The amendment added in 1897 is as follows:

"Provided, That when the insurance is for the benefit of the estate of the insured, or payable to said estate, the proceeds of the insurance may be bequeathed and devised by the insured to any person or persons, or for any uses, in like manner as he may devise any other property or effects of which he may be possessed, other than his homestead." Chapter 4555, Acts 1897.

The proviso to the section was amended in 1903 so as to read as follows:

"Provided, however, That whenever the insurance is for the benefit of the estate of the insured or is payable to the estate or to the insured, his or her executors, administrators or assigns, the proceeds of the insurance may be bequeathed by the insured to any person or persons whatsoever or for any uses in like manner as he or she may bequeath or devise any other property or effects of which he or she may be possessed and which shall be subject to disposition by last will and testament." Chap. 5165, Acts 1903.

See Sec. 3154, Gen. Stats. 1906; Sec. 3154, Florida Comp. Laws, 1914; Sec. 4977, Rev. Gen. Stats. 1920; Sec. 7065, Comp. Gen. Laws 1927. A proviso in a statute may contain additional legislation and not merely limit the scope of pre-

ceding provisions.   See Burlingham v. Crouse, 228 U. S. 459.

The Act of 1872 and the amendments of 1897 and 1903 afford alternative provisions for the disposition of the proceeds of life insurance policies that are made payable to the insured or to his estate.   One provision of the statute operates if the policies are not bequeathed and the other provision operates if the policies are bequeathed.   In either case the policies are not subject to the debts of the insured.

Under the Act of 1872, being the first part of the present statute, insurance policies made payable to the insured or to his estate, if left so payable at the death of the insured, would inure to his wife and children in equal portions, but under the amendments of 1897 and 1903, policies of insurance payable to the insured or to his estate may be bequeathed as "other property or effects," that are subject to testamentary dispositions, and if so bequeathed, the first part of the statute, or the original Act of 1872, has no application because policies payable as here when bequeathed as permitted by the statute, pass under the will and not under the statute.   If they pass under the will, they are like "other property or effects" of a married man, subject to the dower rights of his wife even as against his last will and testament if she duly asserts her dower rights.

Under the Acts of 1872, which is the first part of the present statute, policies of insurance that are made payable to the insured or to his estate, if left so payable at his death, would inure to his wife and children in equal portions, and such policies so payable could not be bequeathed by the insured if he be a married man with a child or children.   The manifest and only purpose of the amendments to the statute which constitute the proviso, is to authorize life insurance policies payable to the insured

or to his estate to be bequeathed by the insured. If such policies are bequeathed under the proviso of the statute, they cannot then "inure" to the wife and children of the insured under the preceding provision of the statute, and such preceding provision is not and cannot be made applicable to the policies. This is necessarily the intent. of the proviso, otherwise the proviso would be wholly ineffectual to accomplish its obvious purpose. If the policies are bequeathed as the statute expressly authorizes, they necessarily pass under the will and cannot "inure" under the statute. The wife of the insured cannot claim dower rights in insurance policies on the husbands' life that are payable to the insured or to his estate, if a statute provides otherwise; but the wife can claim dower rights in such insurance as against the husband's testamentary disposition of the insurance policies, and under the proviso of the statute, such policies may be bequeathed by the insured, thereby making inoperative the preceding provision of the statute that such policies shall "inure" to the wife and children of the insured.

While under the Act of 1828, insurance on the life of a husband for the benefit of his estate was like his other personal estate, subject to the statutory dower rights of his widow, the Act of 1872 exempted such insurance from debts of the insured and made it *inure* to his widow and children in equal portions, thereby securing to the widow an equal portion with each child of the insured as a substitute for her dower interest in such insurance. The purpose of the Act was to secure such insurance to the widow and children.

The provisos added to the Act in 1897 and 1903, permit the insured to bequeath the insurance, when it is payable to him or to his estate, in like manner as he may bequeath his other property or effects that are subject to testamen-

tary disposition. These amendments released such insurance *from the absolute requirement* of the Act of 1872 that it shall inure to the widow and children of the insured in equal portions, by authorizing the insured to bequeath such insurance in like manner as he may bequeath "any other property or effects," "which shall be subject to disposition by last will and testament." If the insurance payable as in this case is not bequeathed it inures to the widow and children in equal portions under the first portion of the statute. If the insured bequeaths his life insurance as authorized by the proviso of the statute, it must be done in like manner as he may bequeath any other property or effects which shall be subject to his last will. The insurance is then subject to the laws relative to wills of personal estate; and under the Act of 1828, Sec. 3630, Rev. Gen. Stats. 1920, Sec. 5494, Comp. Gen. Laws 1927, if the widow dissents from the disposition made of such insurance by will, she may have her dower of one-third therein; or under the Act of 1838, Sec. 3632, Rev. Gen. Stats. 1920, Sec. 5496, Comp. Gen. Laws 1927, she may take a child's part as defined by the statute, in lieu of dower. Under the Act of 1872 as amended, Sec. 4977, Rev. Gen. Stats. 1920, Sec. 7065, Comp. Gen. Laws 1927, such insurance is not subject to debts of the insured unless it is expressly made payable to creditors. The statutes intend that whenever a husband shall die in this State having insurance upon his life payable to the insured or to his estate and leaving a widow and children, the widow shall share in such insurance equally with the children of the insured if the insurance is not bequeathed, and if it is bequeathed, but the disposition is not satisfactory to the widow, she may claim dower therein even against the will; and that in lieu of dower the widow may elect to take a child's part as defined in the statute. In

this case there being a bequest of the insurance and two children of the insured, the widow should take a third of the insurance proceeds payable as here, whether she takes dower or a child's part. If the widow takes a child's part instead of dower in her husband's personal estate except his homestead exemptions and his life insurance, it would be subject to the husband's debts. Benedict v. Wilmarth, 46 Fla. 535, 35 So. R. 84; Thompson's Digest of Florida Statutes, page 185 notes. But by the terms of the statute of 1872, life insurance is not subject to creditors of the insured unless the policies so provide. See Section 4977, Rev. Gen. Stats. 1920; Sec. 7065, Comp. Gen. Laws 1927; Chapter 1864, Acts 1872; Pace v. Pace, 19 Fla. 438; Pittman v. Milton, 69 Fla. 304, 68 So. R. 658; Eppinger v. Canepa, 20 Fla. 262; Gilchrist v. Jeffcoat, 64 Fla. 79, 59 So. R. 243.

The first part of the statute, Sec. 7065, Comp. Gen. Laws 1927, makes life insurance policies that are payable to the insured or to his estate, inure exclusively to the wife and children of the insured if the policies are left undisposed of at the death of the insured; and it is expressly provided that such policies shall not be subject to the claims of creditors of the insured, unless the insurance "was effected for the benefit of such creditors." Under the proviso of the statute, life insurance policies that are payable to the insured or to his estate or to his legal representatives, may be bequeathed by the insured in like manner as he may bequeath his other property or effects that may be disposed of by last will and testament. When policies so payable are bequeathed, they cannot inure to the widow and children under the statute; but being bequeathed *in like manner as his other property or effects,* they are subject to the statutes defining the dower rights of the widow as other property or effects of the insured

would be. The provision that such policies may be bequeathed "to any person whatsoever or for any uses in like manner as" "any other property or effects * * * which shall be subject to disposition by last will and testament," shows an intent that such bequest shall be subject to applicable laws regulating the right to dispose of property by last will and testament; and under the statute a husband cannot by will deprive his widow of her dower rights in his property or effects. Besides this, Sec. 7065 is intended to secure insurance policies to the widow as well as to children of the insured. Statutes do not protect the children against their ancestor's last will and testament; and ordinarily the right to inherit may be cut off by will, but dower cannot be cut off by a will. The statute is designed (1) to secure policies of life insurance to the consort and children of the insured where the policies are for the benefit of the estate of the insured and are so left at the death of the insured; (2) to exclude creditors unless they are the beneficiaries of the policies; (3) where the policies are payable to the insured or to his estate or legal representatives, to permit the insured to bequeath the policies in like manner as other property or effects of the insured that are subject to testamentary disposition, may be bequeathed. The last provision is designed to meet the varying conditions of the family and estate of the insured, subject to provisions of law that control the bequest of the property or effects of the insured. The dower statute gives the widow her dower rights in all of the personal estate of the husband that is left at his death; and under the statute such dower right if duly asserted must be satisfied even against the husband's last will and testament, and the dower right is superior to the rights of creditors. The statute permitting life insurance policies payable as here, to be bequeathed, does not expressly or

impliedly exclude the operation of the dower statute, but on the contrary permits such policies to be bequeathed only in like manner as other property or effects of the insured may be bequeathed, and property or effects cannot be bequeathed as against dower rights.

At common law, marriage alone did not cause a revocation by operation of law of a prenuptial will of a man, the wife having her dower rights notwithstanding the will. The widow may claim her dower rights as against the husband's will, whether he left a child, or not, and whether the will was executed before or after the marriage. A will cannot exclude a widow from her statutory rights in her husband's estate; but an heir may be excluded by will from participating in a testator's estate other than his homestead real estate. See Herzog v. Trust Company, 67 Fla. 54, 64 So. R. 426.

Where several coexisting statutes relate to rights in the same species or classes of property, each shall be given its appropriate intended effect upon the property even though neither statute refers to any other and each is framed in general comprehensive language. For example the statutes relating to wills, dower, descent, administration, homestead and other exemptions, taxes, assessments, debts, penalties, forfeitures, bankruptcy, etc.

Under Sec. 4977, Rev. Gen. Stats. 1920, Sec. 7065, Comp. Gen. Laws 1927, if a testator "shall die in this State leaving insurance on his life, the said insurance shall inure exclusively to the benefit of" his children and wife in equal portions, or to any person or persons for whose benefit such insurance is declared in the policy. But by the same statute whenever the insurance is for the benefit of the estate of the insured or is payable to the estate of the insured or to the insured, his or her executors, administrators or assigns, the proceeds of the insurance may be bequeathed by the insured to any persons whatsoever "in

like manner as he may bequeath or devise any other property or effects of which he may be possessed, and which shall be subject to disposition by last will and testament.''

The words ''in like manner'' have reference to the disposition of the insurance as ''any other property or effects,'' and not to the form of executing a will. The statute deals with property and not with the form of wills.

Under Sec. 3630, Rev. Gen. Stats. 1920, Sec. 5494, Comp. Gen. Laws 1927, a testator cannot bequeath his property against his widow's dower rights without her consent or acquiescence. See Godwin v. King, 31 Fla. 525, 13 So. R. 108; Serkissian v. Newman, 85 Fla. 388, 96 So. R. 378. Where a decedent leaves a wife and more than one child, the widow, even against her husband's will, is ''entitled to one-third part in fee simple,'' of ''the personal estate'' of her deceased husband. As against the children as his heirs at law, a testator may under the Act of November 20, 1828, Sec. 3592, Rev. Gen. Stats. 1920, Sec. 5457, Comp. Gen. Laws 1927, bequeath any of his personal property or effects, and by Sec. 4977, Rev. Gen. Stats. 1920, Sec. 7065, Comp. Gen. Laws 1927, as against his children as his heirs, he may bequeath the proceeds of insurance on his life that is payable to the insured to his estate or his executors, administrators or assigns, since there is no statute securing rights of children against a testator's bequest of his personal estate.

When a person dies in this State leaving insurance on his life payable to the insured or to his estate or to his executors, administrators or assigns, such insurance by the terms of the statute inures, immediately upon the death of the insured, to his widow and children in equal portions, unless the insured under the statute makes a valid bequest of such insurance. When such insurance is not bequeathed by will, it ''inures'' to the widow and chil-

dren of the insured under the statute, and it does not, at the death of the insured, become a part of the personal property of the estate of the insured for administration and distribution subject to the claims of creditors of the insured. See Bradford v. Watson, 65 Fla. 461, 62 So. R. 484.

The statutory rights given the insured where insurance policies are made payable to the insured or to his estate or to his executors, administrators or assigns, to, in effect, change the statutory beneficiaries of the policies, not by assignment, transfer or otherwise made effective in the life time of the insured, but by bequeathing the proceeds in like manner as he may bequeath any other property or effects that are subject to disposition by will, does not affect the operation of the statute which gives dower rights to the widow of the insured, since the statutes authorizing wills do not supersede statutes securing dower rights, and Sec. 4977, Rev. Gen. Stats. 1920, Sec. 7065, Comp. Gen. Laws 1927, is intended to be beneficial and not detrimental to the widow of the insured. See Castle v. Castle, 267 Fed. 521; Burdett v. Burdett, 26 Okla. 416, 109 Pac. R. 922, 35 L. R. A. (N. S.) 964. The beneficiaries of the policies under the will take as legatees and not by contract and the widow is entitled to dower as in "other property or effects" of the testator.

The beneficiaries were not named in the insurance policies as in Central Bank v. Hume, 128 U. S. 195, and under the statute the insurance does not "inure" to the wife and children of the insured until his death; and it does not then "inure" to them if a valid testamentary disposition is made of the insurance by the insured, though the insured may not bequeath such insurance against his widow's dower rights duly asserted.

Statutory provisions for dower are not repealed or superseded or modified by implication even if there were any such implication in Section 4977, Rev. Gen. Stats. 1920; Sec. 7065, Comp. Gen. Laws 1927. See Godwin v. King, 31 Fla. 525, 13 So. R. 108.

In this case if the insured had not bequeathed the proceeds of the insurance on his life, which he left at his death, the statute would make such proceeds "inure exclusively to the benefit of" his two children and his wife "in equal portions," even though the insurance policies were issued and the bequest was made before the insured was married to the present widow, because the statute refers to the time when the insured "shall die in this State leaving insurance on his life," and makes the insurance proceeds when payable as in this case, inure, at the death of the insured, to the benefit of the wife as well as the children. The right of the insured under the statute to bequeath the proceeds of the insurance on his life in like manner as he may bequeath or devise any other property or effects of which he may be possessed, is restricted by the provision in the sentence, that such proceeds may be bequeathed as he may bequeath or devise any other property or effects *"which shall be subject to disposition by last will and testament."* When the insured undertook to exercise his statutory right to bequeath the proceeds of the insurance policies, it could be done only as he could bequeath his "other property or effects" that were subject to disposition by last will, and his "property or effects," were not "subject to disposition by last will and testament," as against the dower rights of his surviving wife. The insurance policies on the husband's life, payable as herein stated, were left so payable at his death, and under Section 4977, Rev. Gen. Stats. 1920, Sec. 7065, Comp. Gen. Laws 1927, such insurance, would "inure exclusively

to the benefit of'' his wife and his two children ''in equal portions,'' but for the will made by the insured under the statute which authorized him to bequeath such proceeds ''in like manner'' as ''other property or effects'' of the insured that are ''subject to disposition by last will and testament'' of the insured husband. The insured could under the statute of wills, Act of November 20, 1828, Sec. 3592, Rev. Gen. Stats. 1920, Sec. 5457, Comp. Gen. Laws 1927, bequeath his property or effects as against his children as his heirs, but he could not bequeath his wife's dower interest in his ''property or effects'' as against her claim of dower rights therein. See Act November 7, 1828; Sec. 3630, Rev. Gen. Stats. 1920; Sec. 5494, Comp. Gen. Laws 1927. The same rule is applicable to Sec. 4977, Rev. Gen. Stats. 1920; Sec. 7065, Comp. Gen. Laws 1927, regulating rights in policies of insurance on the lives of persons who die in this State. Assuming that the testator could have changed the beneficiaries of the insurance policies by transfer, assignment or otherwise during his life so as to deprive his wife of any dower or other interest therein as in other personal property owned by him, yet he could not do so *by will* under the statutes as against the widow's dower rights. See Smith v. Hines, 10 Fla. 258.

The last clause of Sec. 4977, Rev. Gen. Stats. 1920, Sec. 7065, Comp. Gen. Laws 1927, should be given its appropriate intended effect as well as all the other provisions of the statute. The statute was intended to benefit the widow of an insured; and proceeds of the insurance policies payable as here may under the statute be bequeathed in like manner as other property or effects, though such proceeds are not ''subject to disposition by last will and testament,'' as against the widow's dower rights therein. Such dower rights notwithstanding the testamentary bequest, made under Sec. 4977, Rev. Gen. Stats. 1920, Sec.

7065, Comp. Gen. Laws 1927, is secured by another statute, Sec. 3630, Rev. Gen. Stats 1920; Sec. 5494, Comp. Gen. Laws 1927; but there is no statute giving the children of the insured an interest in his personal estate as against his testamentary bequest; and Section 4977, Rev. Gen. Stats. 1920, Sec. 7065, Comp. Gen. Laws 1927, itself excludes the creditors where they are not the beneficiaries of the policies. In Gilchrist v. Jeffcoat, 64 Fla. 79, 59 So. R. 243, the insured left no widow or child or will.

By the terms of the will, the legacy to the Children's Home Society of Florida is to be paid before there can be a "rest and residue" of the testator's estate "including policies of insurance on my life" that is devised in trust. It clearly was not intended by the testator that the insurance proceeds should be used to pay the legacy to the Children's Home Society of Florida.

By the terms of the statute the proceeds of the insurance not effected for the benefit of creditors are not liable to the claim of the creditors. Pace v. Pace, 19 Fla. 438; Bradford v. Warson, 65 Fla. 461, 62 So. R. 484. It is contended that the provision of the statute making insurance on the life of a decedent exempt from claims of creditors of the decedent unless the insurance "was effected for the benefit of such creditor or creditors," violates Sec. 1, Art. X, of the State Constitution in that the organic provision is self executing and limits exemptions to "one thousand dollars' worth of personal property." The proceeds of insurance on a decedent's life where the policies are made and remain payable as in this case, do not since the act of 1812 become a part of the general assets of a decedent's estate subject to the payment of debts; and it is competent for the legislature to provide that such proceeds being peculiar in their nature, shall not be subject to the claims of creditors without violating the limitations

of the homestead provisions of Sec. 1, Art. X of the Constitution, such organic provisions not being applicable. It is peculiarly appropriate that proceeds of life insurance policies made payable to the insured or to his estate or to his legal representatives should be by statute protected from the claim of creditors and secured to the children and consort of the insured with statutory leave to the insured to bequeath such proceeds as the family circumstances require, when the statutory dower rights of the wife are not violated. The Constitution does not forbid such statutory regulations of the disposition of the proceeds of life insurance made payable to the insured or for the benefit of his estate. The will does not contemplate that the testator's debts shall be paid from the policies of insurance on his life, even though he directs that his debts and liabilities shall be paid as soon as practicable after his death. The insurance policies were specifically bequeathed in trust principally for the testator's children. The children as heirs, may have no statutory rights against the father's disposition of his property by a *valid* will except as to his homestead real estate; but the dower rights of a wife in any of the testator's property or effects are not subject to testamentary disposition by the husband, if the wife duly asserts her dower rights as widow of the testator.

In McLean v. Fisher, 60 Fla. 331, 53 So. R. 614, the widow claimed as sole heir at law and not a dower right. In Sloan v. Sloan, 73 Fla. 645, 74 So. R. 407, the widow took under the husband's will and did not claim dower. Pace v. Pace, 19 Fla. 438, arose before the proviso to Sec. 4977, Rev. Gen. Stats. 1920, Sec. 7065, Comp. Gen. Laws 1927, was enacted allowing the proceeds of the insurance policies made payable to the insured or to his estate, to be bequeathed by the insured to any person or persons whatsoever in like man-

ner as he may bequeath or devise any other property or effects of which he may be possessed, and which shall be subject to disposition by last will and testament.

In the Pace case it is held that where an insured dies leaving a policy of insurance payable "for the benefit of the estate of the insured," under the statute the only child of the insured takes the proceeds of the policy not as heir or distributee but as beneficiary of the policy under the statute, there being no widow. It seems that the beneficiary in that policy has not changed (see Eppinger v. Canepa, 20 Fla. 262), and there being no widow, the statute made the insurance proceeds "inure" to his only child, if the insured "shall die leaving insurance on his life" payable for the benefit of his estate, and it was held that the trustee in bankruptcy of the insured was not entitled to the proceeds. The language of the opinion in the Pace case should be considered in the light of the fact that no question of a bequest of the proceeds of insurance on the decedent's life or of dower rights in such proceeds was involved, because there was no widow of the insured and the proviso to Sec. 4977, Rev. Gen. Stats. 1920, Sec. 7065, Comp. Gen. Laws 1927, authorizing disposition by will had not been enacted.

The cause will be remanded with directions to reform the decree so as to award the widow her dower rights in the proceeds of the insurance policies. It is so ordered.

STRUM AND BROWN, J. J., AND JOHNSON, Circuit Judge, concur.

ELLIS AND BUFORD, J. J., dissent.

TERRELL, C. J., disqualified.

BROWN, J. (concurring): Upon the reargument of this case, the question was raised in behalf of one of the appel-

lants, the widow of the deceased, as to whether the statute, Sec. 4977, Rev. Gen. Stats.; Sec. 7065, Comp. Gen. Laws, invoked by the complainants in the court below, appellees here, applies to the case as made by the bill. The insistence is that by the language of the Act it is limited in its operation to the disposition of the proceeds of insurance policies insuring the lives of persons *dying in this State,* whereas the bill did not allege that D. P. Davis died in Florida and only alleged by the barest inference that he ever lived in this State. This inference in drawn from the allegation that the will was probated in Hillsborough County and his designation of himself in his will, which is made a part of the bill, as being "of Hillsborough County, Florida." This characterization of the allegations of the bill appears to be correct. However, there was no objection by demurrer or otherwise to this weakness in the bill in the court below, and the appellants here filed their several answers to the bill without alleging therein that Davis was not a resident of this State, or that he died beyond the borders thereof, and without rebutting in any way the inferential allegation in the bill that he was a resident of Hillsborough County, Florida. Furthermore, the pleadings of both complainants and defendants were all apparently framed upon the assumption that the disposition of the proceeds of the insurance policies was governed by the laws of this State, and the court below evidently acted upon this assumption. On appeal, we think that it might well be deemed by this Court that the inferential allegation of the residence of the deceased above referred to was accepted as being sufficient by the defendants in the court below, appellants here, or so acquiesced in by them, as to amount to such a tacit admission of the fact that Davis was a resident of Florida at the time of his death, as to preclude any objection on that score at this stage of the case. However, this preclusion

might not apply to the point made, that the bill totally fails to allege that Davis died in this State. But was an allegation of this nature essential? The answer to this question depends upon whether or not the insurance statute above referred to applies only to insurance on the lives of persons dying in this State. While freely acknowledging the difficulty of the question so raised, our view is that the statute is not so limited in its operation, and that the assumption upon which this case appears to have been tried in the court below, to-wit, that the disposition of the proceeds of the insurance policies left by the deceased at his death was governed by said statute, was correct.

True it is that the body of the statute begins with the words "Whenever any person shall die in this State, leaving insurance on his life, the said insurance shall inure," etc. Thus the very first words of the Act appear, on first approach, to conclusively sustain appellant's contention. Considered separately from the statute as a whole, there is no mistaking their meaning. They are plain enough. And yet, if the manifest intention of the statute is to be given effect, surely the Legislature did not mean what it so plainly said in these first few words. It could hardly have done so without defeating to a considerable degree the chief purpose of the statute, and in all probability the entire statute constitutionally considered. What the Legislature probably intended to say (transposing the position of the words "in this State") was: "In this State, whenever any person shall die leaving insurance on his life," etc. Manifestly, the main purpose of the statute was to afford certain valuable protection to surviving members of the families of any and *all* the people of this State who happen to die leaving life insurance not made payable to any designated beneficiary, regardless of any such adventitious circumstances as the

place of death of the insured. If this statute should be construed as extending this protection to the widows and children of only those insured resident of Florida whose death occurs in this State and denying it to the widows and children of residents of this State who happen to die beyond its territorial boundaries, this would be an arbitrary and unreasonable discrimination, and would deny to the latter group the equal protection of the laws. To illustrate, let us suppose two farmers, each with large families and owing large debts, living in the northern part of Leon County, Florida, near the Georgia line, each having his life insured for $5,000.00 payable at death to their respective estates. Let us suppose further that each is stricken with serious illness resulting in death, one dying at home, but the other in the nearby hospital at Thomasville, Georgia, where he had been taken for an operation which it had been thought might save his life. If the quoted words of the statute be given their literal meaning and the statute given the construction contended for by appellant, the widow and children of one of these citizens would be protected in the collection of the full amount of the proceeds of the insurance policy, whereas the widow and children of the other would be entirely deprived of the protection which, by this statute, construed as a whole, the Legislature manifestly intended they should have, and which right had attached, under the policy and the statute, before actual death took place. It is no uncommon occurrence for resident citizens of Florida to die outside of this State, while temporarily absent therefrom for various and sundry, yet entirely legitimate, reasons. Surely it was not the intention of the statute to deprive their families of the benefit and protection which the statute affords on any such ground as that. A study of the statute as a whole convinces us that the statute had no such intention.

The present statute, and the general public policy which it evinces and puts into operation, had its origin in the Act of 1872, Chap. 1864 of the Laws of Florida, which was entitled, ''An Act to provide the manner in which moneys collected in life insurance shall be paid.'' It was practically the same as the present statute, except as to the proviso, which was added in 1897 and amended in 1927. The Act of 1897, being Chap. 4555, was entitled: ''An Act to amend Section 2347 of the Revised Statutes of the State of Florida, relating to the disposition of the proceeds of life insurance.'' This Act is substantially identical with the original Act, down to the proviso which it added thereto, and which proviso related to bequeathing or devising the proceeds of insurance when it was for the benefit of the estate of the insured or payable to his estate. The Act of 1903 further amended the proviso. This Act, Chap. 5165 of the Laws of 1903, was brought forward in the General Statutes of 1906 as Sec. 3154, and in the Rev. Gen. Stats. of 1920 as Sec. 4977, and in the Comp. Gen. Laws of 1927 as Sec. 7065. The title of the Act of 1903 was: ''An Act to amend an Act entitled 'An Act to amend Sec. 2347, of the Revised Statutes of the State of Florida, relating to the disposition of the proceeds of life insurance,' approved June 4, 1897, being Chapter 4555, Laws of Florida.''

The title of an act is a part of the act, and may be resorted to in aid of the construction of the act, as evidence of the legislative intent, and the whole statute, including the title, may be considered together in arriving at such intent. Jackson Lumber Co. v. Walton County, 116 So. R. 771, 95 Fla. 632, and authorities cited. There is nothing in the titles of any of these various acts which indicates any legislative intention to except from their operative effect upon ''the proceeds of life insurance,'' the proceeds of such insurance held by residents of this State who die outside its

boundaries. *Per contra,* these titles indicate a broad, state-wide policy, ''relating to the disposition of the proceeds of life insurance,'' without denial of its benefits to any class of our citizens or residents, or their families.

It is hardly conceivable that the settled public policy of the State for the past fifty-seven years, with reference to the disposition of life insurance proceeds, as exemplified by this statute, should have been intended to be inapplicable or ineffective if the insured, though a resident of this State and the insurance made payable in this State, happened to die outside the State. What reasonable relation exists between the manifest intention of the statute as to the disposition of the proceeds of the insurance and the mere place of death of the insured: The mere *place* of death should have no effect upon the *contract* of insurance or its collectibility within this State by those entitled to the proceeds, provided, of course, proof of the *fact* of death can be made. Why should it have any effect under the statute? There is no reason why it should have; and to give it any such effect would be to go contrary to the manifest intention and main purpose of the statutes as a whole, and to also probably render the entire statute unconstitutional and void, as being based upon a purely arbitrary and wholly unreasonable classification. Thus it appears that while the first few words of the statute are plain in their meaning and unambiguous when considered alone, they become very doubtful and ambiguous when construed in connection with the context—the statute as a whole, including its title. In fact, the three words, ''in this State,'' as they are placed in the opening words of the statute, are inconsistent with and repugnant to the remainder of the statute, give it a meaning which was not intended, and must either be considered as stricken therefrom or as transposed to some other position in the sentence as hereinabove suggested, or the statute must fail

in its purpose in many cases, or fall. altogether. It is the duty of the court to so construe the statute as to uphold its validity and effectiveness if possible to do so in the light of sound and applicable principles of statutory construction, some of which we will now consider.

The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the Legislature. But as the courts cannot legislate, this intention must be gleaned or ascertained from the statute, its language, policy and purpose, and where the language, the meaning or intent of which is in dispute, is plain and intelligible, it must as a general rule be given effect by the courts according to its plain and natural meaning. Board of Commissioners v. State, 118 So. R. 313. But where some part of the language of a statute is of doubtful meaning when construed in connection with the body of the statute, or where an adherence to its strict letter would lead to injustice, to invalidity, to absurdity, or to contradictory provisions, the duty devolves upon the courts to ascertain the true meaning and intent of the statute in its entirety, and give effect to it, if this can be ascertained from a consideration of the statute as a whole, even though, in doing so, the spirit or reason of the law prevails over a portion of its letter. Especially is this true where the literal meaning of the questionable portion of a statute is absurd and apparently inserted through inadvertence. In order to give effect to the evident purpose of a statute as a whole, some phrase of which is repugnant to the remainder or imperfectly expressed, it is sometimes permissible to transpose the position of words and phrases so as to accord with, rather than defeat, the manifest legislative intent. And there are cases where, instead of applying qualifying words and phrases to their next antecedent, as strict grammatical construction might require, they are applied distributively to that part of the subject matter to which

they appear by the context most properly to relate, and to which they are indeed most applicable. See Black Interpretation of Laws, 166 et seq.; Am. & Eng. Encyc. of Law, 2nd ed., 602, 612-3, 616; 36 Cyc. 1106-1116; Axtell v. Smedley, 59 Fla. 430, 52 So. R. 710; Curry v. Lehman, 55 Fla. 847, 47 So. R. 18; Davis v. Fla. Power Co., 64 Fla. 246, 60 So. R. 759, Am. Cases 1914 B. 965; Peninsular Industrial Ins. Co. v. State, 61 Fla. 376, 55 So. R. 398; Goode v. State, 50 Fla. 45, 39 So. R. 461; City of Miami v. Romfh, 66 Fla. 280, 63 So. R. 440; State v. Beardsley, 84 Fla. 109, 94 So. R. 660.

It will have been noted that one of the provisions of this statute, that relating to the power of the insured under certain circumstances to provide for the disposition of the proceeds of the insurance by will, *expressly* becomes operative, as to the power to make a will bequeathing the same, before the death of the insured. Can it be said that a will bequeathing the insurance proceeds made by the insured in accordance with the statute would be invalidated by reason of death subsequently overtaking the maker of the will while outside the State? Furthermore, if the literal meaning contended for be given the first few words of the statute, the legislature would be attempting the impossible. Many persons die in this State leaving insurance on their lives, the disposition of the proceeds of which cannot possibly be governed by this statute; citizens of other states, for instance, who hold insurance policies made and payable in such other states, who die while temporarily sojourning in this State. 32 C. J. 976, et seq.; 37 C. J. 364-5. Nor can the statute always be given effect even where the insured is a resident of this State at the time of his death, and dies within this State. See Equitable Life Ins. Co. v. McRee, 75 Fla. 257, in which case the insurance contract was consummated in Alabama, while the insured was a

resident of that State, and without reference to the laws of this State, and was made payable to the insured's administrator, which was permissible under the law of Alabama. Afterward, the insured became a resident of Florida and died in this State. Payment by the Company to insured's personal representatives was held proper, upon the ground that under these facts, the Florida statute did not apply.

The above considerations lead us to the conclusion that under the statute construed as above indicated, it was not incumbent upon the complainants in the court below to allege in their bill that D. P. Davis died in this State. This was not essential, in view of the other allegations in the bill, in order for them to successfully invoke the applicability and operative effect of the above quoted statute upon the proceeds of the insurance policies described in the bill.

The general rule is that the distribution of the proceeds of a life insurance policy is governed by law of insured's domicile; subject to certain exceptions, as in the McRee case above cited, where the contract was consummated in another state and made payable in accordance with its laws. See 7 Cooley's Briefs on Ins., 6333, 37 C. J. 365, and Pace v. Pace, 19 Fla. 438.

We come now to the consideration of the claims made by the defendants in the court below, of the right to enforce payment of their respective claims out of funds realized from the collection of said insurance policies. And first, as to the claim of the widow of the insured to a dower interest in said fund.

The precise question presented is: Does the widow's statutory right of dower in the "personal estate" of her deceased husband attach to the proceeds of insurance policies on his life, payable to the insured, or his estate,

or his personal representatives, where he has made testamentary disposition thereof to a trustee for the benefit of his father and his children by the terms of a will to which she has signified her dissent?

In considering this question, it might be well to look at the legal background as it exists independently of the above quoted statute.

If there were no statute on the subject, the question as just propounded should undoubtedly be answered in the affirmative; because the various policies and their proceeds, being made payable, some to the insured, some of them to his estate, some to his administrators and assigns, and one to his executors, administrators and assigns, and none of them having been assigned by the insured, nor the beneficiaries changed by arrangement with the insurors under terms contained in the policies, if there were such, would all have been assets of his estate at his death, and hence subject to dower and distribution.

In the absence of statutory provisions the contrary, it seems to be well settled that where a life insurance policy is made payable to the insured himself or to his estate, or to his executors, administrators or assigns (without any provision that it is so made payable for the benefit of any named beneficiary), and the policy is not assigned or transferred or the beneficiary changed under the terms of the policy by the insured before his death, the money accruing on the policy at his death, and indeed the policy itself, becomes a part of his estate, like any other chose in action, payable to him or his estate, and hence assets in the hands of her personal representatives. See 7 Cooley's Briefs on Ins., 2nd Ed., 6335 et seq., 37 C. J. 565, and cases cited. Thus it was held in Gilchrist v. Jeffcoat, 64 Fla. 79, 59 So. R. 243, that where the husband took out a policy on his life payable to his wife, and, if he survived

her, to himself, and his wife died before he did, the policy
never having been assigned or bequeathed by the husband,
upon the death of the latter, leaving neither wife nor chil-·
dren surviving him, the proceeds of the policy become
a part of the deceased husband's "general property," and
hence subject to his debts. It was said in that case, in
the opinion by CHIEF JUSTICE WHITFIELD: "The purpose
of the statute is to provide for the wife and children of
the insured and not primarily to exclude creditors where
there is no wife or children or persons specially designated
as beneficiaries." And in McLean v. Fisher, 60 Fla. 331,
53 So. R. 614, it was held that where a policy is made pay-
able to the assured, his executors, administrators or assigns,
it is tantamount to being made payable to his estate. It
was further held that, under the statute, the proceeds of
such a policy could be bequeathed by will of the insured.
This is in line with prevailing authority. 7 Cooley's Briefs
on Ins., 6378, 37 C. J. 87. In Sloan v. Sloan, 73 Fla.
345, 74 So. R. 407, it was held that an insurance policy
made payable to the insured, his executors, administrators
and assigns, may be bequeathed as a part of a general
residuary legacy of "all my other personal property."
It was stated in the opinion that a policy so made payable
may be classed "as property that may be bequeathed in
like manner as any other property or effects." We think
it is clear, therefore, that, in the absence of any statute
such as ours providing otherwise, and in the absence of
any assignment thereof or change or a designated bene-
ficiary by the insured in his life time, policies of life in-
surance, and the proceeds collected thereunder, which were
made payable as the policies in this case were made pay-
able, would upon the death of the insured become personal
assets of his estate and subject to the dower rights of the
widow in "the personal estate" of the deceased husband
under Sec. 5494 Comp. Gen. Laws, 3630 Rev. Gen. Stats.

This was in substance the holding in Burdett v. Burdett, 26 Okla. 416, 109 Pac. R. 922, 35 L. R. A. (N. S.) 946, cited in behalf of the appellant widow, It appears, however, to be well settled that, as to such class of policies, a *bona fide* assignment thereof by the insured during his life would be upheld as valid and enforcible, he having the right to assign away his interest and title therein the same as with his interest in any other chose in action. The rule appears to be well settled that such policies may be assigned by the insured without the consent of his wife or any other person. Cooley's Briefs on Ins., Vol. 2, 1784, 1804, citing many cases. (A different rule, however, applies to a policy payable to a named beneficiary and containing no right in the insured to change the beneficiary.) For much the same reasons that support the rule above stated with reference to the power of the insured, under the class of policies referred to; to make a valid assignment of the policy, it is also generally held that in the absence of statute or if there be no statute to the contrary, he can dispose of the same by will. Cooley in his Briefs on Ins., Vol. 7, p. 6378, expresses the general doctrine thus: "As the proceeds of a life policy, payable to the executor, administrator or assigns of the insured, become a part of insured's estate on his death, they may be disposed of by will." It appears, therefore, that if we had not had any statute on the subject such as that hereinabove set forth, the policies involved in this case, not having been assigned and not having been payable to a designated beneficiary, the insured would have had the power to dispose of the proceeds of such policy by will, as he did do; but it would also follow that the widow of the insured, the provision made by the will not being satisfactory to her, would have had the right to dissent thereto, as was done in this case, and take dower in such proceeds as part of the "personal estate" under our

dower statute, regardless of the provisions of the will otherwise bequeathing the same. Such was the holding in the Oklahoma case of Burdett v. Burdett, *supra,* where no such statute as ours was involved.

The question here is, does our insurance statute operate to change the power, or the effect of the exercise of the power, of the insured to dispose of the proceeds of life insurance policies, made payable to him or his estate, by will, subject to the widow's right of dower, as such power existed before the statute was adopted and as would certainly exist now if there were no such statute? This has proven a very difficult and perplexing problem and has given the writer and the other members of this Court considerable labor and concern. It has been very ably argued, and reargued, by able counsel on both sides. I was at first inclined to think the above question should be answered in the affirmative, but I have come to doubt the correctness of my original view.

The first part of the statute provides that the proceeds of such policies shall, on the death of the insured, go to the widow and children equally. But a proviso was added later which says that, as to policies payable to the insured or his estate, the insured may dispose of the proceeds of same by will as he could any other property or effects subject to disposition by last will and testament. This appears to leave the power of disposition by will, and the effect of its exercise, just where it was before the statute, if the insured sees fit to exercise such power. That is, if the insured elects to direct the disposition of the proceeds of the insurance by will, the matter of such disposition is lifted out of the statute, the statutory disposition no longer applies, and the insured deals by will with the proceeds of such insurance just as he sees fit, in the same manner and with the same effect as he would ''any other property or effects subject to

disposition by last will and testament," just as he could have done before the statute was enacted and with the same effect. But, it is said, the statute repeals the right of dower in the proceeds of insurance, and such right no longer exists. This was my original view. Undoubtedly, the effect of the statute without the proviso is to supersede or suspend the operation of the dower statute on the proceeds of insurance policies, by making a disposition thereof somewhat different from that of the dower statute, but the proviso excepts from the operation of the statute those policies which are made payable to the insured or his estate and which the insured elects to dispose of by will as he would any other property or effects, thus putting such policies and their proceeds where they were before the statute was enacted and where they would be if there were no such statute, and hence reviving the operation of the dower statute thereon. This construction is in line with the usual function of a proviso, which is to except something from the enacting clause which would otherwise be within it. So. Bell Tel. Co. v. D'Alemberte 39 Fla. 25, 21 So. R. 570; Lake County v. State, 24 Fla. 263, 4 So. R. 795; State v. Duval County, 23 Fla. 483, 3 So. R. 192. This line of thought, developed as it is with so much cogency by Mr. Justice WHITFIELD in his able opinion, has brought me to a different viewpoint, and has caused me to concur in his opinion, and the conclusions therein reached.

STRUM, J. (concurring) : I concur in the matters of law discussed in the foregoing opinion by Mr. Justice BROWN, but I have all along been of the opinion that the decree appealed from should be reversed.

WHITFIELD, J., AND JOHNSON, Circuit Judge, concur.

JOHNSON, Circuit Judge (concurring) : Prior to the enactment of Chap. 1865, Laws of Florida, Acts of 1872, the

proceeds from life insurance policies, where such policies were made payable to the insured, or to his estate, or to his executors or administrators, became a part of the personal estate of the insured upon his death. Upon the death of the insured the proceeds became subject to the payment of debts of the insured, and also became subject to the laws of descent and distribution of decedent's estates. And we must also hold to the opinion that such insurance was also subject to disposition by last will and testament, subject, of course, to the widow's dower and to the rights of creditors after dower was satisfied.

As we see it, sentiment crystalized against the right of creditors to come in and subject the proceeds of life insurance to the payment of the debts of the deceased where children and a wife or husband survived. To meet this situation the Legislature of 1872 enacted Chap. 1865, Laws of Florida. It is our opinion that the primary purpose and intent of the Legislature in passing this Act was to prevent the creditors from taking the proceeds of life insurance of a deceased. The primary purpose could not have been changing only the widow's share from dower to a child's part. Frequently the only appreciable estate a husband leaves is the proceeds of life insurance. This fact is common knowledge. Frequently the widow is left with small children. These facts were undoubtedly known to the members of the Legislature passing this Act. To say, after a careful analysis of Chap. 1865, Acts of 1872, and the acts amendatory thereof, that it was the intent of the Legislature to fix the law so that the widow would be left entirely out of participating in his life insurance if the husband happened to so will, regardless of her condition in life and the number of small children she might have, as we see it, would be a violent and arbitrary construction.

Now there are certain fundamental rules which should be observed in construing a statute:

In construing and applying a statute, the language used, the subject regulated, the purpose designed to be accomplished, and the means adopted for accomplishing the purpose should be considered to ascertain the true and lawful legislative intent, which alone has the force of law. Tylee v. Hyde, 60 Fla. 389.

In construing and applying a statute, the main object is to effectuate the valid legislative intent. In ascertaining this intent as to the subject matter upon which the law operates its language and purpose should be considered. Snowden v. Brown, 60 Fla. 212.

The legislative intent is the essence and vital force of a statutory enactment. State v. Patterson, 67 Fla. 499.

Chap. 1865, including the title, reads:

An Act to provide the manner in which moneys collected in life insurance shall be paid.

Section 1. That when any person shall die in this State leaving insurance upon his or her life, the said insurance shall inure exclusively to the benefit of his or her child or children, husband or wife, in equal portions, or to any other person or persons for whose use and benefit the said insurance is declared in the policy; and the proceeds thereof shall in no case be liable to attachment, or any legal process by any creditor or creditors of the person whose life was so insured, unless said policy declares that said insurance was effected for the benefit of such creditor or creditors. Chap. 1865, Acts of 1872.

It appears that both this Act and its title were hastily drafted and inaptly worded, but the intent of the Legisla-

ture is clear. Primarily it was to take the proceeds from such life insurance from the creditors. Secondarily, it only changes the widow's portion from dower to a child's part. Otherwise this law did not affect or change the law of descent and distribution.

In 1897 the Legislature amended this law, in title and body, to read:

> An Act to amend Sec. 2347 of the Revised Statutes of the State of Florida, relating to the disposition of the proceeds of life insurance.
>
> 2347. Disposition of Proceeds.—Whenever any person shall die in this State leaving insurance on his life, the said insurance shall inure exclusively to the benefit of his child or children, husband or wife, in equal portions, and to any person or persons for whose use and benefit said insurance is declared in the policy, and the proceeds thereof shall in no case be liable to attachment, garnishment, or any legal process by any creditor or creditors of the person whose life was so insured, unless said policy declares that said policy was effected for the benefit of such creditor or creditors; Provided, That when the insurance is for the benefit of the estate of the insured, or payable to said estate, the proceeds of the insurance may be bequeathed and devised by the insured to any person or persons, or for any uses, *in like manner as he may devise any other property or effects of which he may be possessed, other than his homestead."*. (Italics ours.)

The words of the statute saying "in like manner as he may devise any other property or effects of which he may be possessed," clearly brings the proceeds from life insurance into the estate and classes it with other personal property, otherwise the words quoted are valueless.

The true meaning of a statute is to be determined from the body of the act itself, and the intention of the lawmaker is to be deduced from the whole and every part of a statute. Bushnell v. Dennison, 13 Fla. 77.

Under our law the husband has the power to dispose of all of his property, except the homestead, by last will and testament. He doesn't have to leave his children anything outside of the homestead. Our law does provide that where the husband, by last will and testament, doesn't make satisfactory provisions for his wife she can dissent from the will and take dower, one-third part of his lands for life, and one-third part of his personal estate in fee simple.

·In 1903 this law was again amended. The only substantial change by this last amendment is in the proviso of the Act which was amended to read as follows:

Provided, however, that whenever the insurance is for the benefit of the estate of the insured, or is payable to the estate or to the insured, his or her executors, administrators or assigns, the proceeds of the insurance may be bequeathed by the insured to any person or persons whatsoever or for any use in like manner as he or she may bequeath or devise any other property or effects of which he or she may be possessed, and which shall be subject to disposition by last will and testament. Chapter 5165, Acts 1903, Sec. 7065, Compiled General Laws of Florida, 1927.

These words throw the proceeds from such life insurance into the estate and subject to the last will and testament as other personal property or effects.

I cannot put any other construction on this statute than:

1. The creditors, under no circumstances, are to get the proceeds from such life insurance. Because the statute says

"that the proceeds thereof shall in no case be subject to attachment, garnishment, etc., by any creditor or creditors."

2. Where there is no last will and testament disposing of such insurance it is to be distributed to the child or children, and husband or wife, of the deceased in equal portions.

3. When there is a last will and testament disposing of such insurance, then it immediately becomes subject to the law governing the disposition of other property and effects of the deceased by last will and testament.

In this State the father or mother can by last will and testament dispose of all of his or her real and personal property away from the children, other than the homestead. But under our law the husband cannot deprive his widow of her dower interest in his real and personal property.

Are we to ignore and treat as surplusage the words of the proviso last above quoted? Our statutes already provided for the form and formalities necessary to dispose of property, real and personal, by last will and testament.

I am convinced that the decree of the lower court should be reversed and the widow allowed her dower in the life insurance involved.

ELLIS, J. (dissenting) : D. P. Davis died testate leaving insurance on his life. His will was probated in Hillsborough County in November, 1926. Arthur Y. Milam and the First National Bank of Tampa were named in the will as "Executors and Trustees."

Davis left surviving him a widow and two children by a former marriage. His estate, exclusive of the proceeds of the insurance policies is probably insolvent. The proceeds of the policies of insurance, which policies were made payable one to himself and the other to the estate of the insured or to the insured, his executors, administrators or

assigns, have been collected by his "Executors and Trustees." The amount collected was upwards of $200,000.00.

The will directed that the just debts of Davis be paid including sick-bed and funeral expenses. There was a bequest of $25,000.00 to the Children's Home Society of Florida. Mrs. Harriett Mann was named in the will as guardian of the "persons and estates" of the two minor children, George and David. The "rest and residue of the property of every kind and nature whatsoever and wheresoever situated" belonging to the testator at the time of his death, or in which he had any interest "including policies of insurance" on his life, he gave, devised and bequeathed to Milam and the Bank ".as trustees for the following uses and purposes."

Then follows specific directions as to the management . and disposition of the property. The testator's father should be paid $2,500.00 per year during his life. The guardian of the two children, Mrs. Mann, should receive a like sum per annum during the continuance of her guardianship; the two children to receive each $5,000.00 per annum, or so much thereof as might be necessary for support, maintenance and education during their minority and as each became of age he should receive a like sum of money until he became thirty-one years of age, at which time each should receive one-half the corpus of the estate, subject to certain conditions unnecessary to mention here. No provision was made for the widow. The will defines the powers that the "Trustees" may exercise concerning the management and control of the estate. These powers it is unnecessary to enumerate here.

The widow, Mrs. Elizabeth Nelson Davis, dissented from the terms of the will and claimed dower in the estate and instituted proceedings in the Circuit Court of Hillsborough County to have her dower set apart.

In view of the probable insolvency of the estate exclusive of the proceeds of the insurance policies the question arose whether the proceeds of such policies, in view of the attempted disposition of such proceeds by will, became part of the estate of the testator and therefore subject to the claim of creditors, the widow's claim for dower and the payment of special legacies bequeathed by the testator, or did they pass under the terms of the will apart from the estate of the deceased to the "Trustees" in trust for the two minor children to be paid out and managed as the will directed for their exclusive benefit.

The two minor sons, by their next friend and guardian Mrs. Mann, and the latter in her own right, exhibited their bill in the Circuit Court for Hillsborough County against the "Trustees" Milam and the Bank; Mrs. Elizabeth Nelson Davis, the widow; The Children's Home Society; George R. Davis, father to the deceased; Tiffany and Company of New York and Floyd Hurst of Virginia, the two last named being creditors of the deceased, and prayed that the Court should construe the will; that the proceeds of the insurance policies should be determined not to be subject to the debts of the deceased; nor subject to the claim of the widow for dower; that the proceeds of the policies be declared to be a trust fund to be administered by the "Trustees" and not by the "Executors" and that the latter be ordered to turn over the proceeds of such policies to the "Trustees" named in the will to be held and disposed of according to the terms of the will, and for general relief.

Answers were filed by the "Trustees" and other defendants severally.

The case was heard on bill and answer, and in April, 1927, the chancellor rendered his decree holding: First, that the proceeds of the insurance policies were not subject

to the debts of the deceased; second, that such proceeds were not subject to the widow's claim for dower nor to the payment of the legacy to the Children's Home Society; third, that such proceeds passed under the fourth clause of the will to Milam and the Bank as trustees, "not as executors," for the purpose stated in the fourth paragraph of the will; fourth, that the proceeds of the policies of insurance constitute a trust fund to be administered by the trustees, as such and not as executors; the fifth and sixth paragraphs of the decree relate to matters pertaining to the administration of the trust fund.

From this decree the "Trustees," the widow, the Children's Home Society, George R. Davis, Tiffany and Company and Floyd Hurst appealed. The decree of the Chancellor was affirmed by a divided court at the June Term, 1928.

A petition for a rehearing was granted and the case was again orally argued in December, 1928. The case had been thoroughly briefed by able counsel, who have been of much assistance to the Court in considering the single question involved.

The will of the testator was made on the 25th day of May, 1925. It was filed for probate in November, 1926. It does not appear from the pleadings or the decree where Davis died or when he was married to the defendant Elizabeth Nelson Davis, but it does appear that as late as October 5, 1926, he executed his promissory notes to Tiffany and Company in the sum of $19,000.00, and in some of the briefs it is asserted that he married the defendant Elizabeth after the date of his will. It does not appear from the pleadings that Davis died in this State, or that he was a citizen of this State. The will was signed by the testator at Tampa, Florida.

The cause, in the opinion of a majority of the Justices

of the Court should be remanded with directions to reform the decree so as to "award the widow her dower rights in the proceeds of the insurance policies."

As the decree is not directed to be amended in other respects it is probably intended to be affirmed in so far as it holds that the proceeds of the insurance policies are not subject to the claims of creditors, or to the special legacy to the Children's Home Society, but are subject to the payment of the annuity bequeathed to George R. Davis for life and the payment of the annuity to the guardian of the minor children during the guardianship, and further subject to the "terms of the trust created by the said last will and testament."

It is clear from a careful reading of the will that it was the testator's purpose that his debts, including sickbed and funeral expenses and the special legacy to the Children's Home Society, should be paid out of property that he might own or have an interest in at the time of his death, and that the "rest and residue" of such property "including policies of Insurance" on his life should go to Milam and the Bank as trustees for the purposes set forth in the will. There was no effort by the testator to deal directly with the *proceeds* of the policies of insurance as a certain or specific fund to be devoted to a certain use. The "policies of insurance" along with the "rest and residue" of the testator's estate after the payment of debts and the special legacy to the Children's Home should constitute a fund to be devoted to a certain purpose mainly the support and education of his two children until they arrived at the age of thirty-one years when what was left of the fund, whether decreased or increased by the management of the trustees, should be divided between the children.

In the meantime the trustees were empowered to sell and convey any portion of testator's "estate," make contracts and execute conveyances to purchasers; to carry on any business or enterprise in which the testator might be engaged; to borrow money and secure same by mortgage or pledge; to lease any portion of the estate for a term of years; to compromise and settle any claims against or in favor of the "estate"; to acquire by purchase or otherwise additional property real or personal; to carry on the business of the "estate"; to acquire stock in other enterprises; to improve real estate and build houses; to lend money on mortgages or other securities and to "do and perform such other acts and things as in their judgment may be for the benefit of my estate."

A distinction was made in the will and observed in the decree of the lower court between the powers of Milam and the Bank as "Executors" of the will and as "Trustees" of the fund so created. The powers and duties enumerated in the fourth and fifth paragraphs of the will were to be exercised and discharged by the "Trustees."

In view of the insolvency of the estate of the testator, exclusive of the proceeds of the insurance policies, the question arose as to whether such proceeds became part of the estate of the testator upon the probate of the will.

Now, as the widow's claim for dower, which in this case amounts to one-third of the personal estate in preference over all other claims and free from all liability for the debts of the decedent, Sec. 5494 Comp. Gen. Laws 1927, the amount of her dower would be augmented by the one-third portion of the insurance proceeds if they are considered as part of the personal estate of the decedent, which is the claim definitely set up in her answer.

It appears from the answer of the executors and trustees that the United States Government has a claim upon

the estate approximating $100,000.00 for back income taxes and that in view of their information the assets of the estate, exclusive of the proceeds from the policies of insurance, would probably be insufficient to pay other claims. The trustees and executors aver that depending upon the application of the proceeds of the policies the estate of the decedent will be solvent or insolvent.

Now, if the proceeds of the insurance policies became part of the decedent's estate, it may be sufficient to pay the claim of dower, all creditors, the Government's claim for back taxes if established, the special legacy to the Children's Home Society and other special legacies, but nothing left for the two minor children to whom it is claimed the "rest and residue" of the estate after the payment of debts and the special legacy to the Children's Home Society was bequeathed and devised.

So, the question presented by the pleadings in this case is: whether the proceeds of the insurance policies became on the probate of the will part of the decendent's personal estate or whether under the proviso to Sec. 4977 Rev. Gen. Stats. 1920 such proceeds were validly bequeathed to Milam and the Bank as trustees for the uses exclusively as set out in the will.

In the case of Woodberry v. Matherson, 19 Fla. 778, the Court defined the word "dower" as follows: "Dower, in its technical and popular acceptation, refers exclusively to real estate, and according to Blackstone 'has reference to that portion of the lands or tenements of a man, which his widow enjoys during her life, after the death of her husband.' In this State, however, it has a broader signification by statute, including her interest, not only in the realty, but also in the personalty of her deceased husband. (Laws 1828, 1838) 10 Fla. 258." That opinion was rendered in the year 1883.

The law upon the subject of dower, as expounded in that case, has not been modified by statute nor the opinion of the Court overruled, limited or criticised to the present day. The statute upon the subject is a hundred years old. Therefore, unless life insurance proceeds become part of the personal estate of the decedent there can be no question of dower in such proceeds. Whatever may be the widow's interest in such proceeds it is a misuse of terms to call it "dower." The case of Burdett v. Burdett, 26 Okla. 416, 109 Pac. R. 922, and reported in 35 L. R. A. (N. S.) 964, definitely holds that under the provisions of the statute of that State and Indian Territory, the proceeds of life insurance policies payable to insured or to his executors are the separate property of the insured and "if not otherwise disposed of by him go to his executors as part of his estate, subject to the widow's dower."

All the authorities cited in the majority opinion, both statutes and decisions, support the proposition that "dower" is a widow's interest in the estate of her deceased husband who died seized and possessed of property and in the absence of a statute providing otherwise, the proceeds of life insurance policies payable to the insured or his executors, administrators or assigns are subject to "dower rights like other personal estate of the insured."

It follows therefore that if Mrs. Elizabeth Nelson Davis, the widow of the decedent, has any interest whatever in the proceeds of the insurance policies one of two propositions must be true; the proceeds of the policies must have become part of the personal estate of the decedent upon the probate of the will or she must claim as a beneficiary under the policies.

Now the statute, Sec. 4977 Rev. Gen. Stats. 1920, definitely takes the proceeds of such policies of life insurance payable to the insured or his executors or to named benefi-

ciaries out of the estate of the decedent and places them beyond the reach of creditors by any legal process unless such policies declare that they were ''effected for the benefit of such creditor or creditors.''

It is inescapable therefore that those who have any interest in the proceeds of life insurance policies take as beneficiaries under the policies and not as widow and heirs of the decedent. Even creditors of the decedent, if they take any interest at all, must take as named beneficiaries.

Life insurance is a matter of contract between the insurer and the insured and the rule obtains that where a person is named as beneficiary such person acquires a vested interest in the policy which cannot be divested without his consent unless the right is reserved in the contract. See Cook on Insurance p. 126; Stringfellow v. Alexander, 96 Fla. 1, 117 So. R. 899.

It is a settled rule that the assured in an ordinary life insurance policy cannot, by his will, change the beneficiary designated in the policy. Virgin v. Marwick, 97 Me. 578, 55 Atl. R. 520. Also see note in *In Re* Harton's Estate, 213 Pa. St. 499, 62 Atl. R. 1058, 4 L. R. A. (N. S.) 939.

In the year 1872 the Legislature by Chapter 1864, Sec. 2347, Rev. Stats., merely supplied as beneficiaries the children, husband or wife of the insured in cases where a person should die in this State leaving insurance on his or her · life in which there were no described beneficiaries showing affirmatively that the children, husband or wife, were intended to be excluded. See Pace v. Pace, 19 Fla. 438.

In the above case Mr. Justice WESTCOTT quoted approvingly the rule, which was considered as supported by the ''great weight of authority,'' that the beneficiary under a life policy has a valuable interest which becomes vested and passes beyond the control of the assured upon its execution and delivery. Construing the statute, he said: ''To allow

participation in the proceeds of the policy, by any person other than the children, husband or wife of the assured, the policy must in terms state that it was for some other person, creditor or creditors''; that ''There can be no exclusion of these parties unless the purpose to exclude them is manifest and without doubt, and the purpose must appear as we have stated.'' It was held that the administrator held no interest as such in the proceeds of the policy.

In the case of Eppinger, Russell & Co. v. Canepa, 20 Fla. 262, in an opinion by the same learned justice speaking of life insurance and the assured said: ''He had a right to direct to whom it should be paid. Insurance policies other than those payable before death, are ordinarily taken out for the benefit of some third person or class of persons, and not as a mere investment for the benefit of creditors. It was in view of this supposed intention that our statute was enacted.''

The amendment of 1897, Chap. 4555, Sec. 3154, Gen. Stats., consisted of a proviso to Sec. 1 of Chap. 1864, Laws 1872. It merely secured to the insured the power to bequeath the proceeds of insurance taken out upon his own life for the benefit of his estate to any person for any use in like manner as he might bequeath or devise any other property or effects other than his homestead.

This statute as amended was construed by this Court in the case of Maclean v. Fisher, 60 Fla. 331, 53 So. R. 614. It was held that under the provisions of the statute a man could bequeath the proceeds of life insurance taken out upon his own life for the benefit of his estate to another person to the exclusion of his wife.

In explanation of this construction of the statute, it is said, in the majority opinion in the instant case, that Mrs. Maclean, the widow, ''claimed as sole heir at law and not a dower right.'' It is true that the bill alleged that Mrs. Mac-

lean was the widow of Alexander Suter Maclean; that he died leaving insurance on his life payable to himself, his executors and assigns; that he died testate and by his will bequeathed and devised "all his property, real, personal and mixed," to Augustus Alston Fisher, "particularly naming and specifying in said last will and testament the proceeds of the said two life insurance policies." It was alleged that he left "no property of any kind or description, real, personal or mixed, save and except the said two life insurance policies." She claimed, it is true, that the proceeds of the two policies inured exclusively to her benefit, there being no child or children. Fisher had been the executor of Maclean's will and the beneficiary of the will. The prayer was for an accounting against the administrators of Fisher's estate of what was due and owing to Mrs. Maclean by that estate; that the defendants be required to pay to her "what shall be found properly to be due on taking the account" and that she have such other and further relief as should seem meet and proper.

The Court said: "Under this statute we are clearly of the opinion that Alexander S. Maclean had the lawful right by his will to bequeath the proceeds of the two policies mentioned in the bill, as he did do, to Augustus Alston Fisher, and that under said will the latter became on the death of said Maclean entitled to the proceeds of said life policies."

What the court decided was the right of Maclean to bequeath the proceeds of the two policies to any person whatsoever for any use. It was the law when that case was decided, as it is now, that the wife's statutory dower rights in her husband's property are not only superior to the husband's will but those dower rights are more liberal to the widow that were the common law dower rights, Herzog v. Trust Company, 67 Fla. 54, 64 So. R. 426; that a widow's dower becomes vested by statute upon her husband's death

and it is unnecessary to take action to secure it. Serkissian v. Newman, 85 Fla. 388, 96 So. R. 378.

It has been the law since 1828 that a widow's dower in personalty where her husband dies intestate or makes his last will and does not make provision for his wife therein, consists of one-half of the personalty if there be one child or no children, but if there be more than one child then it consists of one-third of the personal estate and the claim has preference over all others, and the share shall be free from all liability for the debts of the deceased. See Sec. 5494, Comp. Gen. Laws 1927.

If Mrs. Maclean's dower rights became a vested interest upon the death of her husband, how did such interest become divested? If under her dower rights she had a vested interest in one-half or one-third of the proceeds of her husband's life policies the court had the power under the prayer for general relief to award it out of the proceeds.

It would be quibbling with justice to say that although she had a vested interest in fee simple in half of the proceeds, yet as she asked for all she should be awarded nothing. Such a position could be sustained neither in law nor morals.

I am, therefore, impelled to conclude that in the Maclean case the court held that the proceeds of the life policies were validly bequeathed by the testator to Fisher to the exclusion of any claim of the widow whether as heir, or for dower, or as a beneficiary under the policies.

The Act of 1903, Chap. 5165, made no material amendment either in the statute proper or the proviso.

The function of a proviso is to limit the language of the legislature. It will not be deemed intended from doubtful words to enlarge or extend the act or the provision on which it is engrafted. Sutherland on Statutory Construction p. 297; 36 Cyc. 1161.

It restrains or modifies the enacting clause, excepting something from its operation which otherwise would have been within it. Only those cases that are fairly within the terms of the proviso are taken out of the operation of the statute by it. Futch v. Adams, 47 Fla. 257, 36 So. R. 575.

The majority opinion rests upon the theory. that the widow of the decedent has a dower right in the proceeds of the policies of insurance. It is said that if the proceeds of the policies "pass under the will they are like 'other property or effects' of a married man subject to the *dower* rights of his wife even as against his last will and testament if she duly asserts her *dower* rights." I do not agree to that statement of the law. It is not justified in my opinion by any statute of this State or any decision of this Court or the general law of life insurance.

The statute merely declares who the beneficiaries of life insurance policies shall be in cases where the policies are made payable to the insured, his or her executors or his or her estate, reserving and limiting to him or her the right to bequeath it to any person whomsoever for any purpose to the exclusion of heirs or widow or husband, as the case may be.

The majority opinion, as well as the concurring opnion of MR. JUSTICE BROWN, seems to agree to the following propositions:

First, in the absence of statute the proceeds of life insurance, where the policies are payable to the insured or his or her estate or his or her executors and administrators, become upon the death of the insured part of his or her personal estate only in the event he dies leaving no widow or children. If he leaves wife and children they take as beneficiaries under the policies and not as widow and heirs;

Second, that under Chap. 1864 Laws of 1872 such insurance inures exclusively to the benefit of the child or children, husband or wife, in equal portions and shall not be liable for the claims of creditors;

Third, that under the provisions of the same statute, as amended in 1897 by Chap. 4555 and 1903 by Chap. 5165, such insurance inures to the benefit of the same persons, viz: child or children and husband or wife of the insured in equal portions but that under the proviso adopted in 1897 and amended in 1903 the insured may bequeath the proceeds of the insurance to any person for any use;

Fourth, that when such insurance proceeds are bequeathed by a man who leaves a widow surviving him and makes no provision for her in his will or such provision as does not meet with her approval she may dissent from the ''disposition made of such insurance by the will, she may have her dower of one-third therein.''

I am unable to accept the last proposition. It is difficult to understand how the wife's interest in life insurance proceeds under the provision of the statute being the interest of a beneficiary may become a *''dower''* interest in the proceeds of the insurance if the husband makes a will in which he bequeaths the proceeds of the insurance to a person other than the wife but which proceeds never became a part of his estate. The statute provides that the insurance shall inure exclusively to the benefit of the ''children and husband or wife of such person in equal portions'' where no bequest of the proceeds is made to another. The language of the statute cannot be reasonably construed as favoring the wife over the husband in the matter of the benefit which inures from such policies. If a married woman's life is insured and the policies are payable to her estate may she by will bequeath the proceeds

to whomsoever she desires for any use? Sec. 5458 Comp. Gen. Laws 1927.

If she makes such will may she exclude husband and children from participation in the benefits of the policies? Does the statute operate in one way when it is the wife who makes the will and in another when the husband makes it?

The statute provides that the proceeds inure to "children and husband or wife of such person in equal portions." If the husband should be the one upon whose life the policies are issued and he should leave surviving him a wife and ten children, if he made no will the wife's portion would be one-eleventh in the insurance proceeds. Does the widow's interest increase to a third upon the making of a will in which he attempts to bequeath the proceeds to a trustee for the benefit of his children?

May the wife claim dower in property that never becomes part of the husband's estate? Does the widow's dissent from the provisions of the will annul the bequest of the proceeds of the policies?

If the majority and concurring opinions are correct those questions must all be answered in the affirmative.

Under the statute of this State the proceeds of life insurance policies on the life of a married man or woman payable as the policies in this case were are never potential assets of the estate of either unless the wife or husband, as the case may be, dies leaving the insured without children. So long as either has wife or husband or children the proceeds of the policies under the statute must pass to the surviving wife or husband and children of the insured in equal portions, provided the insured does not bequeath such proceeds to others. It is inevitable therefore that the wife never has a "dower" or "inchoate interest of dower" in the proceeds of such policies. She has under the statute an equal portion with the children in such

proceeds which may be the entire interest or a very small portion of the entire proceeds. A dower interest becomes vested on the death of the husband but if there was no right of dower in the insurance proceeds when did the dower interest come into potential existence and when did it become vested? Did it become vested when the husband died? Obviously not, because he may have made no will. Did it become vested when he made a will? No, because he may have been unmarried then and even though he subsequently married the will may not be probated? It follows, therefore from the majority opinion that this creation of legal fiction called "dower rights in insurance proceeds" comes into existence and becomes vested in the wife not in the husband's estate on his death but in property that never becomes part of his estate and then only upon the probate of his will, the terms of which may not please her. Another peculiar feature of this newly made "rights of married women" is that she may on the death of her husband, who attempts to bequeath the proceeds of his life insurance policies to his children or to a trustee for their benefit, change at her pleasure her status from beneficiary under the policies if there were no will to a one-third interest in the proceeds by the simple process of calling it her dower.

I regret that I cannot agree with my fellow members of the Court in the conclusion reached by them in this case and I prepare this too lengthy dissenting opinion with many misgivings as to its propriety and the reasoning in which it is cast but in full confidence as to its merit. I am convinced that the beneficent purposes of a wise statute fail by the construction adopted and are diverted by the argument in the majority opinion.

BUFORD, J., concurs.

ON PETITION FOR REHEARING

Opinion filed July 18, 1929.

WHITFIELD, J.—A petition for rehearing suggests in effect that, in holding that the proceeds of life insurance policies are covered by and included within the statutes relating to dower, the court failed to distinguish between personal property, which the husband might own, use and enjoy during his life time, that is covered by the dower statute under the phrase "personal property," and a right existing in contract in favor of other parties who as beneficiaries may collect the proceeds of the insurance after the death of the insured, which proceeds the insured can never collect, use or enjoy for himself; that the court overlooked the effect of the use of the words "devise" and "bequeath" in the amendments to the Act of 1872; and that the court overlooked the effect of the Act of 1872 as amended to exclude the operation of the dower statute.

The statutory dower rights of a widow in the property of the husband have precedence over a devise or a bequest of his real or personal property by the husband. Secs. 3629-3630, Rev. Gen. Stats., 1920, Sections. 5493-5494, Comp. Gen. Laws, 1927. Life insurance is a peculiar species of personal property of the insured; and when it is payable to him or to his estate, it is under the statute payable not for the benefit of the estate of the insured but for the benefit of his wife and children exempt from the claims of his creditors. When life insurance "inures" to the widow and children of the insured under Sec. 7065, Comp. Gen. Laws 1927, it passes to the beneficiaries under that statute, and not under the statute of descents or under the dower statute.

When an insured bequeaths the proceeds of his life insurance, such proceeds pass by will as authorized by the statute,

Sec. 7065, Comp. Gen. Laws 1927, and not by contract. The original Act of 1872 excluded the dower statute by giving the widow of the insured a portion of his life insurance equal to that of each of his children. The amendment of 1903 recognized a property interest of the insured in his life insurance payable as in this case, by authorizing the insured to bequeath the proceeds of such insurance. The amendment took from the widow her absolute right under the original statute to a share in such proceeds equal to each child of the insured, but the amendment made an authorized bequest of the insurance proceeds subject to the laws that regulate bequests of ''any other property or effects'' of the insured, and such bequests are subject to the dower statute.

Other petitions for rehearing suggest in effect that in holding the proceeds of life insurance to be property of the insured, subject to dower rights, but that such proceeds are not subject to the debts of the insured, the court denies to creditors of the insured the equal protection of the laws, and deprives creditors of property without due process of law; that the court held that when life insurance is bequeathed it passes by the will and becomes assets of the estate so as to be subject to the widow's right of dower, yet in denying creditors the right to payment from the balance of the insurance proceeds, the court construes and considers that the insurance passed under the statute; that the exemption portion of the statute is not applicable because the court holds that the insurance passed by will and not by contract and statute; that by bequeathing the insurance the insured waived the exemption features of the statute; that in exempting the life insurance from debts of the insured the organic exemption of $1,000.00 of personal property was exceeded and creditors deprived of property without due process of law; that the statutory exemption of life insurance from debts of the insured is effective only when the

insurance passes under contract or statute and not when the insurance proceeds are made subject to testamentary disposition; "and that the proviso in said statute, enacted and inserted subsequent to the said exemption provision excludes such proceeds from the exemption created by the statute as contained in the original Act of 1872, when testamentary disposition is made affecting such proceeds."

All "personal property" or "personal estate" that is *validly bequeathed,* whether it be proceeds of life insurance or "any other property or effects," pass by will as may be authorized by statute, and not by contract or by statute. The holding here is that life insurance payable as in this case is personal property, though of a peculiar nature different from ordinary personal property or personal estate; that the insured has a property interest in his life insurance payable as in this case; that when life insurance proceeds are bequeathed under the statute, Sec. 7065, Comp. Gen. Laws 1927, such proceeds pass by will and not by statute; that a bequest of the proceeds of life insurance is by the same statute made subject to laws regulating bequests of other property or effects; that the operation of the statute securing dower rights in bequeathed personal estate, Sec. 5494, Comp. Gen. Laws 1927, is contemplated by Sec. 7065, Comp. Gen. Laws 1927, when by the authority of the latter statute the proceeds of life insurance are bequeathed; and that the statutory exemption of life insurance proceeds from the claims of creditors, is intended to remain effective though the statutory right to bequeath be exercised and the property passes by will and not by statute, since the main purpose of the statute is provision for the wife and children of the insured. While the statutory authority to bequeath the proceeds of the insurance takes away the widow's absolute right to a child's share, the statute recognizes the property interest of the insured in his life insur-

ance, and the statute being designed for the benefit of the wife and children of insured, also contemplates the assertion of dower rights in such bequeathed proceeds if the widow is dissatisfied with the bequest as made, since the bequest must be in like manner as the insured may bequeath "any other property or effects," that are subject to testamentary disposition, and dower rights in property or effects of the insured are not "subject to disposition by last will and testament" of the insured unless the widow acquiesces therein. While a bequest is not subject to the statute of descents, the law assumes that the children of an insured will be provided for in bequests made by him, and the children of the insured are provided for in the bequest of the proceeds of his life insurance by the insured in this case.

The statute expressly exempts the proceeds of life insurance from any process in favor of any creditor of the insured, unless the insurance be effected for the benefit of creditors. Such exemption being for the benefit of the wife and children of the insured and the exemption being absolute when the insured leaves a widow or child, it applies when the insurance inures to the widow and children under the statute and also when the proceeds of life insurance payable as here are bequeathed by the insured, at least when the widow shares in the proceeds by the provisions of the will or by the assertion of dower rights, and the children are beneficiaries of the bequest of the insurance proceeds. The statutory exemption being of the proceeds of life insurance in which the insured has a property interest, but which proceeds are not *owned* or possessed by the insured in his life time, the organic exemption from the claims of creditors of one thousand dollars' worth of personal property *owned* by the head of a family, is by its own intendment not to be applied; so the statutory exemption controls, it not being

in conflict with organic law, and no property right of creditors arising subsequent to the statute being violated.

A life insurance policy is a peculiar species of property, in the nature of a chose in action, that arises out of contract. It is generally not for the use of the insured, and the proceeds of the insurance are usually not payable until after the death of the insured. These and other attributes distinguish life insurance from other species of property. It may be dealt with as property subject to the contract rights and to applicable provisions and rules of law. Controlling laws may justly classify life insurance for separate and appropriate regulation, as to its acquisition, its transfer or assignment, its beneficiaries, its descent or other disposition, and its exemption from the debts of the insured. In view of a father's duty to provide for his wife and children, the statute enables him to procure insurance on his life payable to him or to his estate which insurance under the statute, at his death, ''shall inure exclusively to the benefit of'' his wife and children, when not validly bequeathed by the insured. Such insurance is property of a nature peculiarly suited to meet family exigencies and it is not a part of the general assets of the estate of the insured which the law contemplates may at his death be used for paying debts of the insured. See Central Bank v. Hume, 128 U. S. 195.

A life insurance policy confers upon duly designated beneficiaries a right to receive the proceeds thereof, viz: a stated sum of money that is usually payable after the death of the insured.

The proviso to Sec. 7065, Comp. Gen. Laws, 1927, is intended to confer additional rights upon an insured, and not to take from or put any limitation upon, the proceding provisions, except as is done by the terms of the proviso;

and such proviso does not affect the exemption contained in the section.

The Act of 1872 providing that life insurance payable as here shall inure exclusively to the wife and children of the insured, and making the insurance proceeds exempt from debts of the insured, are predicated upon a public policy to aid and encourage the making of suitable provision for the family without unduly curtailing the property that is generally subject to the claims of creditors. The original statutory distribution of the proceeds, if the insurance payable as here be left at the death of the insured, was absolute to the widow and children of the insured in equal portions, leaving no right in the insured to so apportion the proceeds as to conserve varying conditions of families. Exigencies of the family might require other and different distributions to best conserve the family welfare.

The insured might have three or more children who do not need an equal share in his insurance money, while his wife might need more than an equal share therein with each child. Or when there is one child the widow might need or be willing to accept in lieu of dower, less than one-half of the insurance proceeds. Other varying family circumstances made expedient and appropriate the amendments to the statute which authorize a testamentary disposition of life insurance proceeds different from that stated in the original statute; but while the amendments take away an absolute right of the widow to a child's part of the husband's life insurance which was given by the statute and was in lieu of dower, such amendments show an intent that other provisions of law regulating the statutory right of testamentary disposition of property in the interest of the family, shall be applicable when the right

to bequeath life insurance proceeds conferred by the amendment is exercised.

The amendment of 1897 applying ''When the insurance is for the benefit of the estate of the insured, or payable to said estate,'' authorized the insured to bequeath the proceeds of his life insurance ''in like manner as he may devise any other property or effects of which he may be possessed, other than his homestead.'' The word ''devise'' is technically and more properly applicable to real estate, and the word ''bequeath'' is more technically applicable to personalty. Neither of the words is always used in its technical sense. The reference in the amendment of 1897 to the ''homestead'' of the insured, was unnecessary or else not sufficiently comprehensive, since under the Constitution a homestead can not be devised by its owner if he has a child or children. Later, Chap. 4730, Acts of 1899, provided that the homestead ''shall not be the subject of devise,'' if the owner ''shall die and leave a widow surviving him, but no children.'' In this state of the law, the amendment of 1903 to the original Act of 1872 as amended in 1897, was enacted, which provides that ''whenever the insurance is for the benefit of the estate of the insured or is payable to the estate or to the insured, his or her executors, administrators or assigns, the proceeds of the insurance may be bequeathed by the insured * * * in like manner as he or she may bequeath or devise any other property or effects of which he or she may be possessed, and which shall be subject to disposition by last will and testament.'' Under this amendment the insured can bequeath the proceeds of his life insurance only when it is left at his death payable as stated in the statute and then only ''in like manner as he may bequeath or devise any other property or effects * * * which shall be subject to'' testamentary disposition. The amendment does

not relate to the manner of executing wills, but confers upon the insured authority to bequeath life insurance which the preceding part of the statute provided should "inure exclusively to the benefit of his or her child or children, and husband or wife in equal portions."

The intent of the statute as applicable to a married man is to benefit his wife and children; and the amendment of 1903, now in force, is intended to authorize the insured to bequeath to any person or use, the proceeds of his insurance payable as in this case, subject to the laws regulating the bequest or devise of any other property or effects of his. If such proceeds are bequeathed the statutes regulating *inheritance* may not apply, but the statutes securing dower rights do apply unless an intent to exclude dower rights is clearly shown. Dower rights cannot be excluded by will, while the right to inherit may be excluded by will. The statutory authority to bequeath the proceeds of life insurance shows no intent to exclude statutory dower rights, but in effect provides that the bequest shall be controlled by laws regulating bequests of other property or effects of the insured.

When life insurance payable as here comes into existence as a peculiar species of property it is in this State controlled as to its disposition by a statute that is appropriate to the nature of the property. The statute regulating the disposition of life insurance proceeds could have excluded the wife of the insured from any dower or other right therein, when the insurance is payable as in this case; but instead, the original act expressly provided that at the death of the insured such insurance shall inure exclusively to his wife and children in equal portions, thus showing an intent to make the widow as well as the children of the insured beneficiaries of the insurance, by providing for the widow to

receive a stated portion of the insurance, which of course would be in lieu of dower.

While the proceeds of life insurance payable after the death of the insured were not and could not have been in the possession of the insured at his death, and while he did not *own the proceeds* of the life insurance that were payable only after his death, yet he had a property interest in the insurance on his life that is recognized by the statute and that is primarily for the benefit of his family though payable after his death, and the statute in authorizing the insured to bequeath the proceeds expressly required it to be done in like manner as he may bequeath any other property or effects of which he may be possessed, and which shall be subject to disposition by last will and testament, thereby intending that rights in the proceeds could not be bequeathed, if like rights in "any other property or effects" of the insured could not be bequeathed; and dower rights in other property or effects of the insured are not subject to testamentary disposition.

Secs. 1 and 2, Article IX of the Constitution of 1868, provided for an exemption of homestead real estate and the improvements thereon, "owned by the head of a family residing in this State," "together with one thousand dollars' worth of personal property" and also for the exemption of additional property to be selected by the head of a family "to the amount of one thousand dollars," which constituted greater property exemptions from debts than those contained in Article X of the Constitution of 1885; yet the Act of 1872, Chap. 1864, enacted while the Constitution of 1868 was in force and providing that the proceeds of life insurance shall not be liable to any legal process in favor of any creditor of the insured unless the insurance policy declares that the policy was effected for the benefit of such creditor, was apparently not regarded as being violative of

the exemption article of the Constitution of 1868, even though such proceeds exceed in amount the organic exemptions.

Article X of the Constitution of 1885 provides that "a homestead to the extent of" a stated acreage of real estate and improvements thereon, "owned by the head of a family residing in this State, together with one thousand dollars' worth of personal property * * * shall be exempt from forced sale," with specified exemptions. "The exemptions * * * shall inure to the widow and heirs of the party entitled to such exemption, and shall apply to all debts except as specified." "The exemptions provided for in the Constitution of 1868, shall apply to all debts contracted and judgments rendered since the adoption thereof and prior to the adoption of this Constitution."

The organic provision of 1885 that "one thousand dollars' worth of personal property * * * shall be exempt" has reference to the personal property *owned* by the head of a family residing in this State as the ordinary and usual personal assets of his estate, and does not necessarily relate to personal property lawfully acquired for a lawful purpose distinct in its nature and uses from his ordinary or general personal estate. The organic exemption, of course, does not extend to property not owned in a beneficial right; and life insurance in any amount may lawfully be acquired by the head of a family payable after his death for the benefit of his wife and children, which the statute may exempt from the claims of subsequent creditors without violating any right of such creditors, since the organic provision exempting a stated amount of the general personal property of the insured is not exclusive and is not a limitation upon any and all statutory exemptions in property of any kind or nature. The organic exemption was not intended to apply to life insurance acquired and payable as in this

case, for the reason that such insurance is a peculiar species of property payable for the benefit of the family after the death of the insured, and the proceeds collectable after his death, are not a part of the "personal property" *owned* by the head of a family as contemplated by Article X of the Constitution of 1885. It is not contended that the insurance in this case was obtained in fraud of creditors. But it affirmatively appears that the insurance was obtained by the insured "when he was both solvent and wealthy." The insurance policies had not been assigned as in Eppinger, Russell & Co. v. Canepa, 20 Fla. 262.

When the Constitution of 1885 was promulgated and adopted, Chap. 1864, Acts 1872, exempting life insurance from the claims of creditors of the insured, where such insurance is not effected for or payable to creditors, was in force, and its validity not challenged. It was evidently not the intent of the Constitution of 1885 that the exemptions provided for therein should supersede or limit the amount of the then existing statutory exemption of the proceeds of life insurance policies made payable by the statute not to the estate of the insured but for the benefit of his widow and children.

The provisions of the Constitution of 1885 recognize the rights of creditors that are not inconsistent with lawful exemptions, and command that real and personal property *owned* by the head of a family residing in this State, to the extent therein stated "shall be exempt;" but such provisions relate to the ordinary classes of personal property and do not expressly or by intendment forbid or limit the exemptions of life insurance proceeds that are payable after the death of the insured, which proceeds were then allowed as exemptions by the Act of 1872 for the benefit not of the insured or his estate but for the benefit of the widow and children of the insured, such insurance not

having been effected or duly declared to be for the benefit of creditors.

It has been held that the organic provisions relative to those who may be excluded from holding office are not exclusive, and that the maxim *expressio unius est exclusio alterius* should be applied with great caution to organic provisions. State ex rel. v. Bryan, 50 Fla. 293, 39 So. R. 929. See also State v. Jacksonville Term. Co., 41 Fla. 377, 27 So. R. 225; Thomas v. Williamson, 51 Fla. 332, 40 So. R. 831; Saxon v. Rawls, 51 Fla. 555, 41 So. R. 594.

In State ex rel. West v. Butler, 70 Fla. 102, 69 So. R. 771, organic provisions relating to the jurisdiction of courts was construed to be strict limitations; but here the organic provisions relate to family welfare and they should be liberally interpreted to conserve the salutary public policy.

The property exemption article of the Constitution should be liberally construed in favor of those for whose benefit it was intended, when the rights of others are not unduly prejudiced. The organic provisions as to exemptions should not be applied to statutory exemptions of the peculiar property of life insurance intended for the benefit of the family of the insured after his death, when such life insurance does not clearly constitute a part of the ''personal property'' *owned* by the head of a family, referred to by the Constitution in allowing exemptions from the claims of creditors. Such statutory exemptions do not prejudice the rights of subsequent creditors. See Re Le Blanc, 142 La. 27, 76 So. R. 223, L. R. A. 1917 F. 1137.

After the Act of 1872 creditors of an insured had no interest in or right to expect payment from the debtor's life insurance unless it was effected or made payable for their benefit; and the statute takes nothing from creditors of an insured. Ordinarily exemptions apply to debts incurred after the exemption laws become effective. This accords

with the decision in Bank of Minden v. Clement, 256 U. S. 126.

The family home place and the personal property exemption obviously were, as a matter of public policy, not regarded by the law making power of the state even before the adoption of the Constitution of 1885, as being in all cases sufficient for the needs of widows and children; and it seems entirely appropriate that under Chapter 1864, Acts of 1872, now in force, the insurance on the life of a husband, payable as in this case, being a peculiar species of property having a special intimate personal relation to the family exigencies, should be exempted from claims of creditors of the insured for the benefit of the surviving widow and children of the insured, when such insurance is payable after the death of the insured and was not "effected for the benefit of such creditors," or for other persons as "declared in the policy."

If when debts are incurred, the creditor has no right to subject particular property of the debtor because it is by law exempt from creditors' claims, such creditors are not injured by the exemption, and they are deprived of no rights because of the exemption.

The amendments of 1897 and 1903 do not change the nature of the life insurance, but expressly confer a statutory right to bequeath the proceeds of insurance policies that had been taken away by the original Act of 1872, wherein the latter act required life insurance payable as in this case and left so payable at the death of the insured, to inure exclusively to the widow and children of the insured in equal portions. But such amendments do not affect the exemption from debts that is contained in the Act amended, or the statutory dower rights when the insurance is bequeathed. The Act as amended, Sec. 7065, Comp. Gen. Laws 1927, retains the exemption from such debts and is

not inconsistent with the dower rights conferred by the dower Act of 1828, now Sec. 5494, Comp. Gen. Laws 1927.

In Pace v. Pace, 19 Fla. 438, it was held that under the Act of 1872, a policy of insurance payable "for the benefit of the estate of the insured," did not pass to the administrator of the insured, but inured exclusively to his only child, there being no widow of the insured, and that no interest in the policy passed to the assigns of the insured, who became a bankrupt before he died. Contrary expressions appear in *In re* D. F. & C. P. Long, 282 Fed. 383; *In re* Morgan, 282 Fed. 650, and Morgan v. McCaffrey et al., 286 Fed. 922, where Federal Bankruptcy Laws and the cash surrender value of life insurance policies were being considered, upon the theory that the exemption of such life insurance from claims of creditors of the insured does not apply until the death of the insured. See Holden v. Stratton, 198 U. S. 292, 49 L. Ed. 1018, 25 Sup. Ct. 656; 50 L. R. A., 33; Burlingham v. Crouse, 228 U. S. 459, 57 L. Ed. 920, 33 Sup. Ct. 564. Here the insured was not adjudged a bankrupt, but died. Under the statute as amended in 1903, the proceeds of the insurance may be bequeathed by the insured, when payable as here, but pursuant to the statute the insurance remains exempt from the claims of creditors of the insured, it not having been "effected for the benefit of such creditors." A policy of insurance payable as in this case becomes a special and peculiar species of property acquired by the insured, which insurance is under the statute, not for the benefit of the insured or his estate, but for the benefit of the wife and children of the insured to be available after his death; so the organic exemption of "one thousand dollars' worth of personal property," "owned by the head of a family residing in this State," is not applicable.

By authorizing the insured to bequeath insurance on his life when it is payable, as in this case, the amendment to the statute does not change the nature of the insurance as a special and peculiar property for special uses and purposes, but merely permits the insured in order to meet the possible exigencies of the family requirements, to make by will a disposition of the proceeds of the insurance different from that stated in the statute.

The Act of 1872 being valid as a statutory exemption, the authority given by the amendments of 1897 and 1903, to bequeath proceeds of insurance payable as here, does not destroy the exemption that is a part of the amended statute or prevent the operation of the dower statute that controls a bequest of property or effects by a married man. The exercise by the insured of the right to bequeath the proceeds of the insurance does not and cannot waive either the exemption provision of the statute or the widow's dower rights, when the insurance is payable as in this case and the insured leaves a widow and children. The exemption was intended for the benefit not of the insured but of the wife and children of the insured, who under the statute may become entitled to the proceeds of the insurance.

The husband cannot waive the dower rights of the wife. The statute as amended intends that the exemption from debts of the insured contained in the original Act, shall continue in force if the insurance proceeds be bequeathed under the amendment to the statute for the benefit of his children as was done in this case, the widow having her dower rights.

In Talcott v. Bailey, 208 N. W. R. 549, relied on by counsel, the will did not include the insurance policy which the statute required to be "distributed to the heirs" of the insured; and it was held that because of the statute the heirs took by contract and not by descent.

In this case the proceeds of the insurance apparently were

collectable only after the death of the insured, and being payable as above stated, such proceeds were under the statute for the benefit of the wife and children of the insured; and the statute exempted the proceeds from the claims of the creditors of the insured whether the proceeds inured under the statute or are bequeathed. If the policies had not been bequeathed, the insurance being exempted from the claims of creditors would, under the statute, have inured to the widow and two children of the insured in equal portions; and such beneficiaries would then take, not by dower and descent, but under the statute operating on the policies. The insurance policies were so payable that under the statute the proceeds thereof may be bequeathed in like manner as other property or effects. The policies were left so payable at the death of the insured and they were included in the provisions of the will of the insured. Though not collectable till after the death of the insured, such proceeds passed by the will under Section 7065, Comp. Gen. Laws 1927, in like manner as "any other property or effects" that may be disposed of by last will under Sec. 5457, Comp. Gen. Laws 1927, subject, like other property or effects bequeathed under said Sec. 5457, to the widow's dower rights under Sec. 5494, Comp. Gen. Laws 1927, but not subject to the debts of the insured, because the statute expressly exempts the proceeds of such insurance so payable from the claims of creditors of the insured, whether such proceeds pass by statute or by bequest, and such statutory exemption, not being in conflict with organic law, is valid and controlling in this case. The statute exempting life insurance from the debts of the insured does not deprive creditors of the insured of any rights existing when the insurance was acquired by the insured.

Rehearing denied.

STRUM AND BROWN, J. J., AND JOHNSON, Circuit Judge, concur.

ELLIS AND BUFORD, J. J., dissent.

TERRELL, C. J., disqualified.